United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Filed May 13, 1997

No. 97-5005

PATRICK J. MAHONEY, REVEREND;
THE CHRISTIAN DEFENSE COALITION,
APPELLANTS

v.

BRUCE BABBITT, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR;
NATIONAL PARK SERVICE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 96cv02827)

————-

On Appellees' Petition for Rehearing

————-

Before WILLIAMS, SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: We issued an injunction pending appeal in this matter, by order of January 19, 1997. We further explained our reasons in an opinion of February 11, 1997. This case now returns to us on appellees' petition seeking rehearing and vacatur on two grounds: first, that the petition is moot under the *Munsingwear* doctrine and second, that in our original opinion we erred in "grant[ing] relief not sought by appellants in District Court." Because we conclude that neither argument warrants the relief prayed, we deny the petition. We do, however, note that insofar as appellants' appeal seeks any relief beyond that already granted in our ruling on the preliminary injunction, appellees' claim of mootness is well taken. Therefore, insofar as any other aspect of the case remains pending before us, we order the same dismissed.

I.

While we have set forth the background of this controversy in our earlier opinion, *Mahoney v. Babbitt,* 105 F.3d 1452 (D.C. Cir. 1997), we will briefly review its history as is necessary for the resolution of the petition now before us. On December 23, 1996, the Reverend Patrick J. Mahoney and the Christian Defense Coalition ("appellants") filed their complaint seeking, *inter alia,* preliminary and injunctive relief against defendants carrying out threats to arrest Mahoney and his associates if they displayed signs critical of President Clinton on sidewalks adjacent to Pennsylvania Avenue during the Inaugural Parade scheduled for January 20, 1997. Defendants opposed plaintiffs' motion for preliminary injunction. Because of the shortness of time before the critical events, on January 3, 1997, plaintiffs moved to accelerate the hearing on the preliminary injunction. On January 16, the Thursday before the scheduled parade of Monday, January 20, the District Court denied the preliminary injunction.

Mahoney and his associates remained under threat of arrest if they exercised their First Amendment rights by displaying signs critical of the President under circumstances in which defendants had admitted that persons displaying signs

supportive of the President would not be arrested. Appellants appealed. On Saturday, January 18, appellants filed an emergency motion for injunction pending appeal from the denial of the preliminary injunction. In view of the critical shortage of time, we expedited the proceeding. Appellees filed opposition to the preliminary injunction. The American Civil Liberties Union filed a brief as amicus curiae, and on Sunday, January 19, we issued our order preliminarily enjoining defendants. Our order granted the emergency motion in part, enjoining appellees and their agents "from arresting or interfering with one or a group of twenty-five or fewer of the plaintiffs displaying signs at the Inaugural Parade expressing criticism of the President of the United States or his policies except in circumstances in which appellees and their agents would arrest or interfere with individuals displaying signs not critical to the President or his policies." Appellants did not seek a stay, either from this court or from the Circuit Justice or any other Justice of the Supreme Court. *See* 28 U.S.C. § 2101(f); SUP. CT. R. 22-23. On January 20, the Inaugural Parade was held as scheduled. Our order was effective, and appellants were able to display their signs on the same terms as citizens having different viewpoints.

Appellees now return, petitioning for rehearing and a vacatur of our prior order and the accompanying opinion, asserting mootness and also arguing in the alternative that the relief granted was not within the power of the court in the proceedings before us. While the alternate ground, concerning the relief granted, borders on the frivolous, if indeed it does not occupy that territory, the mootness argument raises sufficiently serious questions to warrant our consideration, although we ultimately reject it.

II.

Appellees' mootness argument rests on the fundamental principle of our jurisprudence that Article III of the Constitution "limits the "judicial power' of the United States to the resolution of "cases' and "controversies.' " *Valley Forge Christian College v. Americans United for Separation of*

*Church and State,* 454 U.S. 464, 471 (1982). Out of this principle there arise "several "doctrines that cluster about Article III---... standing, mootness, ripeness, political question, and the like....' " *Louisiana Envt'l Action Network v. Browner,* 87 F.3d 1379, 1382 (D.C. Cir. 1996) (quoting *Allen v. Wright,* 468 U.S. 737, 750 (1984)) (additional internal quotations and citations omitted). Mootness comes into question when "circumstances ... destroy the justiciability of a suit previously suitable for determination." 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533 (2d ed. 1984). As appellees point out, appellants only sought relief allowing them to exercise their First Amendment rights at the Inaugural Parade on January 20, 1997. That date has come and gone; appellees were enjoined from interfering with appellants' exercise of their First Amendment rights; and, there is no relief left to grant. Thus, insofar as this case remains an open one, we agree with appellees that it must be dismissed for mootness. The question on which appellees have not so quickly satisfied us is whether we should vacate the relief which we have heretofore granted—that is, our prior order and opinion.

Appellees' argument for vacatur begins with *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950), for many years the leading case on vacatur. In that case the Supreme Court recognized that "[t]he established practice" of the federal appellate system "in dealing with a civil case from a federal court ... which has become moot while on its way" to the appellate court "is to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.* at 39. Of course the *Munsingwear* language which we quote and on which appellees rely, while instructive, is not controlling. The First Amendment questions arising in our review of the denial of the preliminary injunction did not grow moot while the case was on its way here. If January 20th had come and gone before the issuance of our order, the *Munsingwear* language would be more squarely on point. Or, if the appellees had sought a stay of our order from the Supreme Court or one of its Justices, and January 20th and the Parade had passed pending the action of the highest court, again the

*Munsingwear* language would be on point. But that is not what happened. At the time of the allegedly mooting circumstances, rather than being "on its way here," the case had arrived here, and we had decided it. Thus, the vacatur question is now controlled, not by the language from *Munsingwear,* but by *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18 (1994), which has displaced *Munsingwear* as the Supreme Court's latest word on vacatur. In *U.S. Bancorp,* as appellees point out to us, the Court reaffirmed the *Munsingwear* principle "that mootness by happenstance provides sufficient reason to vacate" the judgment below. *Id.* at 25 n.3. But the reasoning underlying the *Munsingwear* doctrine as reaffirmed in *U.S. Bancorp* is that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25. However, the Court went on to hold that where the case has become moot while on appeal by reason of the losing party's having entered into a settlement of the underlying controversy, that party "has voluntarily forfeited his legal remedy by the ordinary processes of appeal," and has "thereby surrender[ed] his claim for the equitable remedy of vacatur." *Id.*

In this case, the losing parties, appellees, elected not to seek further relief upon the entry of our order. That places them squarely within the reasoning of *U.S. Bancorp* governing forfeiture of the right to vacatur. Indeed, the Court in *U.S. Bancorp* went on to say that the settled case "stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all." *Id.* In our case, the appellees did not appeal. They accepted the effects of our emergency order. Granted, their time for doing otherwise was short. But established procedure provides for application to the Supreme Court for a stay of our emergency order. *See* 28 U.S.C. § 2101(f); Sup. Ct. R. 23. They could have addressed the Circuit Justice for such a stay. They chose not to do so. Thus, "[t]his controversy did not become moot due to circumstances unattributable to any of the parties. The controversy ended when the losing party ... declined to

pursue its appeal." *Karcher v. May,* 484 U.S. 72, 83 (1987). In such a case, "the *Munsingwear* procedure is inapplicable...." *Id.*

We realize that this question is a close one. The best support for appellees' position lies not with the Supreme Court decisions in *Munsingwear* or *U.S. Bancorp.,* but rather in our decision in *Clarke v. United States,* 915 F.2d 699 (D.C. Cir. 1990) (en banc). In *Clarke,* a panel of this court had upheld a district court decision invalidating, on constitutional grounds, a congressional limitation contained in an annual appropriations act of Congress for the District of Columbia. The panel issued its decision on September 26, 1989. The appropriations act in question, as extended, expired on November 20, 1989. Between the issuance of the mandate and the expiration of the act, the United States filed a petition for rehearing and a suggestion for rehearing en banc. Although the full court ultimately denied the suggestion to rehear the case en banc on the merits, it explicitly withheld issuance of that mandate "pending disposition by the en banc court" of a suggestion of mootness and motion to vacate filed by the United States between the November 20, 1989, lapse of the appropriations act and the December 15, 1989, decision not to rehear the case on the merits. *Clarke v. United States,* 898 F.2d 161 (D.C. Cir. 1989) (per curiam) (en banc). Hearing the suggestion of mootness en banc, we then held that the mootness did not result from a "voluntary cessation" of the controversial conduct by the losing party, and that therefore, vacatur was in order under *Munsingwear. Clarke,* 915 F.2d at 706. That case is close to the present one. However, there is the critical difference that the United States, the losing litigant in *Clarke,* to whom we granted vacatur, had pursued the appellate route available to it for determination of the controversy until such time as circumstances beyond its control rendered the controversy moot. Not so here.

We further note that one aspect of *Clarke* may no longer be good law. In that case we supported our decision to grant vacatur in part because the precedent, as distinguished from preclusion, established by the existing judgment was made

unreviewable by circumstances beyond the control of the losing party. *See id.* This was never universally recognized as a valid reason for vacatur. While it is generally accepted that a mooted judgment should not preclude the litigants in future litigation, preclusion is not the same thing as *stare decisis,* and it is not self-evident that the precedential effects of a mooted judgment should be any less persuasive than if the mooting events had not occurred. Preclusion is normally based on a decision as to the controversy between the litigating parties. Precedent ordinarily is not. Precedent, more often than not, is drawn from cases not involving either of the parties for or against whom the precedent is offered.

As one commentator has pointed out, there is no particular reason to assume that a decision, later mooted, is any less valid as precedent than any other opinion of a court. "So long as the court believed that it was deciding a live controversy, its opinion was forged and tested in the same crucible as all opinions." 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.10 (2d ed. 1984)[1]. While we operated on the opposite belief in *Clarke*—that is, that the precedential effect of a decision was a reason supporting vacatur—the Supreme Court has since come down on the other side in *U.S. Bancorp.* In fact, that case holds that the precedential power of an opinion is a reason arguing against vacatur. " 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.' " 513 U.S. at 26-27 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

We do not read our decision in *Coalition to End the Permanent Congress v. Runyan,* 979 F.2d 219 (D.C. Cir. 1992) [hereinafter "*Coalition*"], as calling for a contrary re-

---

[1] Of course as in the application of any of our panel opinions as precedent, adversely affected parties in future cases may seek the higher levels of review available from the court en banc and from the Supreme Court.

sult. In that case, a panel of this court had entered a judgment declaring a statute unconstitutional with the statement that the unpublished opinions accompanying the judgment would be replaced by "expanded opinions [that] will issue at a later date." Some months later, the court declined to issue the expanded opinions, noting that the statute in question had been repealed and the case was therefore moot. The panel made its decision expressly on grounds of "[p]rudence" noting that "local Rule 11(c) precludes citing as precedent" the unpublished judgment and summary opinions that accompanied it. *Id.* at 220. That opinion, being based as it was on prudence, does not purport to establish precedent for the full range of future cases.

The differences between *Coalition* and this case include the fact that there the only statute at issue had been repealed, while the regulations governing the use of Park Service property for demonstration remain as effective today as they were at the time of the issuance of our judgment and decision. There is, of course, also the fact that we have issued an opinion, while the panel in *Coalition* had not. We further note, significantly, that even that panel did not vacate its judgment, but only declined to establish further precedent.[2] In this case, we conclude that the establishment of precedent argues against vacatur, not in favor of it. We conclude this, not only for the reasons set forth above on the authority of

---

[2]Even in *Coalition,* one member of the panel would have issued a precedential opinion, noting that "the single most important restraint on the decisions of judges is the tradition that we explain our decisions in writing." 979 F.2d at 221 (Silberman, J., dissenting). Nor is *National Black Police Ass'n v. District of Columbia,* 108 F.3d 346 (D.C. Cir. 1997), relied on by appellee, to the contrary. As appellee points out, that case held that vacatur served the "well-established principle that courts should avoid unnecessarily deciding constitutional questions." *Id.* at 353. However, that case became moot after the entry of the district court judgment but before decision by this court, as opposed to the situation now before us in which we reversed the district court's decision and then the case "became moot" when the relief we entered in favor of appellant became effective without further review.

*U.S. Bancorp,* but also because of the nature of this controversy as a prior restraint First Amendment case. For obvious practical reasons, such cases normally arise in the context of preliminary injunctions and appeals from their denial or grant. If government could by the expedient, of merely not challenging an adverse decision, cause its vacatur, the judicial system could seldom establish precedent governing future cases of prior restraint.

By way of comparison, consider *New York Times Co. v. United States,* 403 U.S. 713 (1971) (per curiam), the "Pentagon Papers" case. In that case, the government sought to enjoin two newspapers "from publishing the contents of a classified study entitled "History of U.S. Decision-Making Process on Viet Nam Policy,' " a topic of the utmost public interest at the time. *Id.* at 714. In a brief per curiam, the Supreme Court reaffirmed the principle that "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Id.* (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963)). Under the theory of appellees in the present case, the United States could have waited until the publication of the "Pentagon Papers" by the two news organizations, then filed a timely petition for rehearing, and obtained vacatur of the by-then moot decision of the Supreme Court. This illustrates our point that while prudence may have compelled the withholding of a published opinion in *Coalition,* it does not compel the vacatur of one already entered on the facts now before the court.

In further support of our decision that prudence does not compel vacatur, we note that the preclusive effect, as distinguished from the precedential effect, of our decision poses little risk of prejudice to the parties. As we have made clear throughout, the fact-specific elements of our opinion, essential to preclusive effect, as opposed to the general principles of law, applicable to the *stare decisis* effect, merely constitute findings in support of a preliminary injunction. In the unlikely event that these same parties again face each other in litigation involving a claim of issue preclusion based on this litigation, then that preliminary stage of this litigation would

be a factor for the future court to weigh in evaluating that argument. *See Commodity Futures Trading Comm'n v. Board of Trade,* 701 F.2d 653, 657-58 (7th Cir. 1983) (noting that findings in support of a preliminary injunction are tentative and that they therefore are *generally* unlikely to have a preclusive effect, but expressing belief that in that particular case they might). We also note that as our prior judgment resolved no disputed issues of fact whatsoever, the risk of any prejudice resulting from preclusion appears to be nil. *Cf. Gjertsen v. Board of Elections,* 751 F.2d 199, 202 (7th Cir. 1984) (noting that the preclusive effect of findings on a preliminary injunction varies with the procedural posture of specific cases). In short, insofar as the question of vacatur addresses prudential considerations, the heavy weight of precedential value greatly exceeds the light, if existent, danger of unfair preclusive effect, which is to say it supports our decision to deny appellees' motion.

In sum, we hold that neither *Clark* nor any other precedent compels the remedy of vacatur sought by appellees. We further hold that the principles of *Munsingwear* and *U.S. Bancorp* compel denial of the motion to vacate. We do, however, note that any other relief which appellants may be seeking in this proceeding has become moot, and our mandate will reflect a dismissal of this appeal.

### III.

Appellees' other ground for its petition for rehearing hardly bears discussion. Appellees, without authority, argue that because we did not grant the total relief sought by appellants—that is, to allow up to 299 demonstrators—we could not grant the partial relief of allowing up to twenty-five demonstrators. In support of their argument, appellees offer a portion of the plaintiffs' prayer in the district court below seeking total relief, and argue that this is a bar to partial relief. Whether there could be any validity to that argument as a general proposition or not, in this case plaintiffs' prayer below included the plea "that by the order of the court the defendants be enjoined from arresting and/or prosecuting

Reverend Mahoney and the Christian Defense Coalition for their proposed demonstration on Pennsylvania Avenue sidewalk on Inaugural Day, 1997." Both the record below and the appellants' filings with us reflected the National Park Service regulation which allows for demonstrations of twenty-five or fewer persons without a permit. 36 C.F.R § 7.96(g)(2)(i). While appellants would certainly have been better pleased had we allowed their primary plea to reinstate their permit arguably improperly revoked by defendant appellees, as we stated in our original opinion, the imminent timing of the parade and the complexity of the issue made it impractical for us to reach that question. We therefore granted the partial relief to which they were plainly entitled without further pause. Appellees' argument that we cannot grant part of the relief prayed without granting all is not only without authority, it is without logical support.

  For the reasons set forth above, we deny the petition for rehearing and the motion for vacatur. Insofar as appellants' appeal remains pending, we order it dismissed.